STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-05-60

Jay R. McLaughlin,
    Plaintiff

v.

Decision and Judgment

Ricky J. DeLodge, Sr.,[1]
    Defendant

FILED & ENTERED
SUPERIOR COURT

JUN 27 2006

PENOBSCOT COUNTY

Hearing on the complaint and counterclaim was held on June 22, 2006. Both parties were present with counsel.

The claims in this action are based on several distinct transactions between the parties. The court addresses those claims in the context of the separate transactions rather than as they have been framed in the counts of the pleadings.

**DeLoge's purchase of Medway property**

The defendant purchased a parcel of property in Medway. He borrowed money from the plaintiff and has not repaid it. The plaintiff alleges that the defendant borrowed $9,000, which the plaintiff claims he paid to the defendant with two checks, one of which was for $6,500 and the other for $2,500. The check for $6,500, however, was designated for "stumpage," by a notation on the instrument itself. From the evidence in this case, the court finds that payment of $6,500 was unrelated to the defendant's land purchase and that the plaintiff loaned the defendant only $2,500 as purchase money. Against the $9,000 claimed by the plaintiff, the plaintiff has given the defendant credits that brought the claimed amount due down to slightly less than $3,000. Because the amount actually

---

[1] At trial, the defendant clarified that his name is spelled Rickey DeLoge. Neither party has moved to correct the misspelling of his name in the caption.

owed by the defendant is $6,500 less than the plaintiff claims, the defendant owes the plaintiff nothing for the $2,500 loan.[2]

### Purchase of skidder

The defendant came into possession of a skidder sold by one Gilbert Tremblay in late winter or early spring 2004. The question presented here is which of the parties was the buyer. That factual issue turns on whether the $23,000 purchase money was the plaintiff's or defendant's. The plaintiff propounded on the defendant a request for an admission that he (the defendant) did not pay the seller any consideration for the skidder. The defendant failed to respond to this request for admission. That failure establishes that the money paid to Trembley belonged to the plaintiff and not to the defendant. *See* M.R.Civ.P. 36. This means that the plaintiff paid for the skidder and that he – rather than the defendant -- was the buyer. This also means that the plaintiff's testimony of the transaction is the more credible of the parties' conflicting accounts.

Under the arrangement as described (more credibly) by the plaintiff, the defendant was to rent the skidder from him for several weeks at the rate of $6,000 per month and then either deliver the skidder to the plaintiff or buy it from the plaintiff. The defendant, in fact, has not paid any rent to the plaintiff; he has not tendered it to the plaintiff; and he has not purchased it from the plaintiff.

At trial, the plaintiff testified that of the remedial options available to him, he wants a judgment of money damages for the skidder. He is entitled to such relief because one of the possible outcomes of his agreement with the defendant was that the defendant would purchase the skidder from him. That was to happen after the brief period of time when the defendant was entitled to use the skidder under a rental agreement. Based on this, the court awards the plaintiff damages of $29,000. This is based on an inferred purchase price of $23,000, which the court attributes to the parties because that was the

---

[2] It appears, actually, that the plaintiff may owe the defendant some amount from the series of transactions outlined in plaintiff's exhibit 6. However, the defendant has not filed a claim for that amount, and the court does not order any relief to the defendant from this series of transactions. (In counts 3 and 4 of his counterclaim, the defendant alleges that the plaintiff owes him approximately $4,250 for wood that the defendant cut but that the plaintiff delivered to the mill and was paid. The court is unable to conclude that this transaction is included in the calculations set out in plaintiff's exhibit 6 and so does not include it in the analysis relevant to that part of the case.)

2

amount paid by the plaintiff to Trembley and because there is no evidence that the parties at bar had agreed to a different price between themselves. That damage award is also based on one month's rent, because that is all to which the plaintiff was entitled to receive under his agreement with the defendant. Although the defendant ended up retaining the skidder, he did so during a period of time when he would have owned it.

Finally, the court rejects as not credible the defendant's testimony that in November 2004, the skidder was damaged by misuse that can be attributed to the plaintiff. Finally, because the defendant is deemed to have acquired ownership of the skidder one month after it was sold by Trembley, the plaintiff cannot be charged with any storage fees that may be assessed by the repair shop in Houlton where the skidder is now located.[3]

### Timber trespass

The plaintiff alleges that the defendant is liable for damages arising from unauthorized cutting of timber off of the plaintiff's land. The defendant previously was adjudicated of a criminal violation arising from this trespass, and so his liability is established. The remaining issue relates to damages due to the plaintiff.

Based on the testimony of the Maine Forest Service Forest Ranger who investigated the trespass, the court finds that the value of stumpage unlawfully removed by the defendant was $14,925. The plaintiff has not proven that the defendant intentionally or knowingly trespassed onto his land. Thus, the plaintiff is entitled to double damages, see 14 M.R.S.A. § 7552(4)(A), which is $29,850. As part of the criminal proceeding, the defendant has paid $3,500, leaving a balance of $26,350. The plaintiff is not entitled to recovery of the cost of professional services under section 7552(5) because he has not established that the defendant had written or actual notice of the claim prior to the time those services were incurred.

### Counterclaim for mill payment

The defendant testified that he cut wood and then contracted with the plaintiff for the plaintiff to deliver that wood to a local mill. He further testified that the mill made

---

[3] This finding, of course, is not binding against the garage because it is not a party to this action. Rather, the court does not award any relief for storage fees as between these parties.

payment to the plaintiff but that the plaintiff has not reimbursed him for the amount due to him. This testimony, based on a claim raised expressly in the defendant's counterclaim, was unrebutted. The court therefore finds for the defendant on this claim.

The defendant was to be paid $50 per cord for, as he testified, 85 or 90 cords. The court uses the lower of these quantities, resulting in damages of $4,250.

For purposes of the entry of judgment, the court aggregates the money damages awarded to the parties on their various claims. Although the defendant prevailed on one of the claims in his counterclaim, the plaintiff has prevailed to a substantially greater degree and thus will be entitled to recover his costs of court. Any claims for relief not expressly granted in this order are denied.

The entry shall be:

For the foregoing reasons, on the parties' claims set out in the complaint and counterclaim, judgment is entered for both parties. The plaintiff is awarded net damages of $51,150, plus pre-judgment interest at the annual rate of 5.77%, post-judgment interest at the annual rate of 10.36%, and his costs of court.

Dated: June 25, 2006

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm